IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS JAMES SMITH,<br><br>    Petitioner,<br><br>vs.<br><br>ELVIN VALENZUELA,[1] Warden,<br>California Men's Colony,<br><br>    Respondent. | No. 2:10-cv-00832-JKS<br><br>MEMORANDUM DECISION |

Marcus James Smith, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Smith is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at California Men's Colony, East, in San Luis Obispo, California.  Respondent has answered, and Smith has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

In 1983, Smith pled guilty to second-degree murder stemming from an incident during which Smith shot and killed his estranged wife and also shot a male individual as Smith's wife and the male were driving to work.  Pursuant to a plea agreement, Smith was sentenced to fifteen years to life imprisonment.

Smith indicates in his Petition that he did directly appeal, but there is no documentation of the appeal in the record before this Court.

---

    [1]    Elvin Valenzuela, Warden, California Men's Colony, is substituted for S.M. Salinas.  FED. R. CIV. P. 25(c).

-1-

On April 15, 2009, the Board of Parole Hearings ("Board") held a parole consideration hearing during which Smith was provided an opportunity to address the Board regarding his suitability for parole. After recessing to deliberate, the Board found Smith unsuitable for parole because he "pose[d] a present risk of danger to society or a threat to public safety if released from prison." The Board concluded that, "[c]onsistent with Proposition 9, . . . this will be a five year denial."

In denying parole, the Board considered the commitment offense, especially its "heinous and cruel manner," its multiple victims, its "trivial" motive, and the fact that it was carried out in a manner which "demonstrates an exceptionally callous disregard for human suffering." The Board also considered, *inter alia*: 1) Smith's "escalating pattern of domestic violence" toward the victim prior to her murder, which involved "repeated threats and terrorizing of [his] spouse with a weapon and/or gunfire"; 2) his "unresolved anger issues" which resulted in a "cell dispute" leading to "enemy concerns . . . in the institution"; 3) his "past criminality"; 4) his minimization of his criminal conduct and his attitude toward the crime, which "indicate[d] a certain degree of self-absorption and self-centeredness"; 5) a psychological report which was "not totally supportive of release" and indicated that there were "unanswered questions about [his] behavior toward the victim"; 6) "[m]isconduct while incarcerated"; and 7) a failure to indicate that he understood "the nature and magnitude of the offense."

On June 24, 2009, Smith filed a petition for writ of habeas corpus with the superior court, arguing that: 1) the Board's determination violated his right to due process because it continued to use the facts of the underlying commitment offense to deny parole, and there was no evidence to substantiate the Board's conclusion that he posed an unreasonable risk of danger to the public;

2) the prosecution violated the plea agreement by appearing at the hearing and urging the Board to deny parole; and 3) the Board's application of Proposition 9 (Marsy's Law) violated the *ex post facto* prohibition of the state and federal constitutions.

  The superior court denied Smith relief in a reasoned opinion. The court concluded that the prosecution did not violate the plea agreement because Smith had entered a written plea agreement carrying the possibility of life in prison and that any time served in excess of the 15-year minimum did not violate the plea agreement. The court additionally concluded that the Board's application of Proposition 9 did not violate the *ex post facto* prohibition of the state and federal constitutions because the change in law was procedural and dealt only with the frequency of parole hearings and not the criteria for determining suitability for parole or the right to a fair hearing. Finally, the court denied Smith relief on his claim that the Board violated his due process rights by relying on the underlying commitment offense in denying parole and that his parole denial was not supported by evidence. The court noted that under California law the proper standard of review is whether there is "some evidence" that an inmate poses a current threat to public safety, and that the Board may consider the commitment offense within the context of the prisoner's pre- and post-incarceration history as well as his current demeanor and mental state in making that determination. The court determined that "there was more than 'some evidence' which led the Board to its finding of unsuitability of [Smith] for parole." The court concluded that the Board considered positive factors which weighed in favor of parole, including that Smith had obtained his GED in prison as well as a certificate for upholstery, and found that they were outweighed by "factors surrounding the circumstances of the life crime, taking into account the prisoner's pre- and post-incarceration history."

On October 26, 2009, Smith filed a petition for writ of habeas corpus with the Court of Appeal, raising the same arguments as his did in the superior court. On November 12, 2009, the Court of Appeal summarily denied Smith's petition.

On November 17, 2009, Smith filed a petition for writ of habeas corpus with the Supreme Court of California, raising the same issues as he did in both the superior and appellate courts. The supreme court summarily denied review on January 21, 2000.

Smith timely filed his Petition for Writ of Habeas Corpus with this Court on February 12, 2010.

## II. GROUNDS RAISED

Smith raises the same grounds for relief that he did in his state habeas petitions filed with the superior and appellate courts—namely, that: 1) the Board's determination violated his right to due process because it relied on the underlying commitment offense to deny parole and there was no evidence to substantiate the Board's conclusion that he posed an unreasonable risk of danger to the public; 2) the prosecution violated the plea agreement by appearing at the hearing and urging the Board to deny parole; and 3) the Board's application of Proposition 9 violated the *ex post facto* prohibition of the federal constitutions.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1865-66 (2010). The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards in habeas review, this Court reviews this "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

<u>Claim One: Sufficiency of the evidence to support the Board's determination</u>

Smith first argues that the Board violated his right to due process by relying on his commitment offense in denying him parole and that there was no evidence to support the Board's conclusion that Smith continued to pose a risk of danger to society or a threat to public safety if released from prison. As mentioned above, the Court of Appeal found that there was more than "some evidence" to support the Board's finding, and that the Board was permitted to consider the commitment offense in conjunction with other factors under California law.

In determining whether there has been a due process violation, the "standard analysis . . . proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, __U.S.__, 131 S. Ct. 859, 861 (2011). In *Swarthout v. Cooke*, the Supreme Court held that "[w]hatever liberty exists [in parole] is, of course, a *state* interest created by California law." *Id*. at 862. "There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Id*.; *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Therefore, California's "some evidence" rule is not a substantive federal requirement, and this Court on federal habeas review will not review whether the state court's decision on the merits was reasonable in light of the evidence before the Board. *Swarthout*, 131 S. Ct. at 862. "[H]owever, [when] a state creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures." *Id*. This Court

is therefore limited to reviewing the record to determine if Smith was afforded an opportunity to be heard and was provided a statement of the reasons why parole was denied. *Id*. (citing *Greenholtz*, 442 U.S. at 16). "The Constitution does not require more." *Greenholtz*, 442 U.S. at 16.

Here, Smith was given an opportunity to be heard. At his parole hearing, where he was represented by counsel, the Board questioned Smith and allowed him to explain aspects of his personal history, including his educational background, his work history, and whether he had any religious awakening during his incarceration. Although defense counsel originally indicated that Smith would decline to address the Board, Smith later accepted the Board's offer at the end of the proceeding to speak to the panel on the subject of his suitability for parole. Smith read a closing statement that he had drafted and then addressed the panel concerning his personal history, educational background, his religion, and his remorse. After recessing for deliberations, the Board detailed its reasons for denying parole, and at the close of the proceeding indicated that it would provide Smith with a copy of the transcripts for his personal records. The record therefore indicates that Smith was afforded an opportunity to be heard and was provided a statement of the reasons why parole was denied, which is all that the Due Process Clause requires. *Swarthout*, 131 S. Ct. at 862; *Greenholtz*, 442 U.S. at 16. Smith is therefore not entitled to relief on this claim.

Claim Two: Breach of plea agreement

Smith next argues that the prosecution violated the plea agreement by appearing at the parole hearing and urging the Board to deny parole. However, as noted by the Court of Appeal, Smith had entered a written plea agreement carrying the possibility of life in prison, and any

time served in excess of the 15 year minimum did not violate the plea agreement.  Smith is therefore not entitled to relief on this claim.

Claim Three: Proposition 9

Smith lastly argues that the Board's application of Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which modifies the availability and frequency of parole hearings, violates the *Ex Post Facto* Clause of the United States Constitution.  The Board relied on Proposition 9 in imposing a five-year denial.

Before Proposition 9 was enacted, California Penal Code § 3041.5(b)(2) provided that the Board of Parole Hearings shall hold a parole hearing annually, except that the Board could defer the next parole hearing for two years if it found that it was not reasonable to expect that parole would be granted during the initial year, or up to five years if the prisoner had been convicted of murder and the Board found that it was not reasonable to expect that parole would be granted during the intermittent years.  *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1103-04 (9th Cir. 2011).  Proposition 9 significantly changed the law governing deferral periods.  *Id*. at 1104.  The Ninth Circuit has summarized the changes as follows:

> The most significant changes are as follows: the minimum deferral period is increased from one year to three years, the maximum deferral period is increased from five years to fifteen years, and the default deferral period is changed from one year to fifteen years.  *See* [Cal. Penal Code § 3041.5(b)(3) (2010)].  Further, the burden to impose a deferral period other than the default period increased.  Before Proposition 9 was enacted, the deferral period was one year unless the Board found it was *unreasonable* to expect the prisoner would become suitable for parole within one year. Cal. Penal Code § 3041.5(b)(2) (2008).  After Proposition 9, the deferral period is fifteen years unless the Board finds by *clear and convincing* evidence that the prisoner will be suitable for parole in ten years, in which case the deferral period is ten years. Cal. Penal Code § 3041.5(b)(3)(A)-(B) (2010).  If the Board finds by clear and convincing evidence that the prisoner will be suitable for parole in seven years, the Board has discretion to set a three-, five-, or seven-year deferral period.  *Id*. § 3041.5(b)(3)(B)-(C).

> Proposition 9 also amended the law governing parole deferral periods by authorizing the Board to advance a hearing date. The Board may exercise its discretion to hold an advance hearing *sua sponte* or at the request of a prisoner. "The board may in its discretion . . . advance a hearing . . . to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner . . . ." *Id*. § 3041.5(b)(4). Also, a prisoner may request an advance hearing by submitting a written request that "set[s] forth the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration." *Id*. § 3041.5(d)(1). A prisoner is limited to one such request every three years. *Id*. § 3041.5(d)(3). Although the minimum deferral period is three years, there is *no* minimum period the Board must wait before it holds an advance hearing. *See id*. § 3041.5(b)(4).

*Gilman*, 638 F.3d at 1104-05.

In *Gilman*, the Ninth Circuit considered whether the district court abused its discretion in granting a preliminary injunction to plaintiffs who brought a class action suit under 42 U.S.C. § 1983 alleging that Proposition 9 violated the *Ex Post Facto* Clause of the constitution and their substantive due process rights. *Id*. at 1105. The court summarized the applicable *ex post facto* law as follows:

> "The States are prohibited from enacting an *ex post facto* law." *Garner v. Jones,* 529 U.S. 244, 249, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000) (citing U.S. CONST. art. I, § 10, cl. 1). "One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Id.* Although retroactive changes in laws governing parole of inmates *may* violate the *Ex Post Facto* Clause, "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." *Id.* at 250, 120 S. Ct. 1362. A retroactive procedural change violates the *Ex Post Facto* Clause when it "creates a *significant risk* of prolonging [an inmate's] incarceration." *Id.* at 251, 120 S. Ct. 1362 (emphasis added). A "speculative" or "attenuated" risk of prolonging incarceration is insufficient to establish a violation of the *Ex Post Facto* Clause. *Cal. Dep't of Corr. v. Morales,* 514 U.S. 499, 509, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995). Thus, Plaintiffs cannot succeed on the merits of their *ex post facto* claim unless (1) Proposition 9, on its face, created a significant risk of increasing the punishment of California life-term inmates, or (2) Plaintiffs can "demonstrate, by evidence drawn from [Proposition 9's] practical implementation . . . , that its retroactive application will result in a longer period of incarceration than under the [prior law]." *Garner,* 529 U.S. at 255, 120 S. Ct. 1362.

*Id.* at 1106 (footnotes omitted).

The court determined that "Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole." *Id.* at 1107. The court concluded that "[e]ven assuming, without deciding, that the statutory changes decreasing the frequency of scheduled hearings would create a risk of prolonged incarceration," *id.* at 1108, Proposition 9 permitted the Board to hold advance hearings *sua sponte* or at the request of prisoners, and the Board's decision to deny a prisoner's request for an advance hearing was subject to judicial review, *id.* at 1109. Accordingly, the availability of advance hearings "would remove any possibility of harm to prisoners because they would not be required to wait a minimum of three years for a hearing." *Id.* at 1109 (citation and internal quotation marks omitted). Reversing the injunction, the court found that the plaintiffs had "not established that they [were] likely to succeed on the merits of their *ex post facto* claim." *Id.* at 1111.

California federal district courts have dismissed without prejudice § 2254 claims that the deferral periods of Proposition 9 violated the *Ex Post Facto* Clause on the ground that the petitioners are members of the *Gilman* class. These courts have determined that these § 2254 claims are the equivalent of a suit for injunctive and equitable relief which cannot be brought where there exists a pending class action concerning the same subject matter. *See Tiffen v. Hartley*, No. SACV 10-1329, 2013 WL 6442689, at *2 (C.D. Cal. Dec. 9, 2013); *Stafford v. Trimble*, No. CV 12-1490, 2013 WL 5491858, at *7 (C.D. Cal. Oct. 1, 2013).

The *Gilman* district court originally certified the class to consist of California state prisoners who had been sentenced to a term that includes life, who are serving sentences that include the possibility of parole, are eligible for parole, and have been denied parole on one or more occasions. *Gilman v. Davis*, No. CIV. S-05-830, 2009 WL 577767, at *4, 6 (E.D. Cal. Mar. 4, 2009). The *Gilman* court advised the parties that the injunctive relief sought would apply to the class as a whole, so that either named or unnamed class members would not be eligible for any form of individualized injunctive relief. *Id.* at *6. The district court also certified the class pursuant to Federal Rule of Civil Procedure 23(b)(2), which does not generally afford a class member "opt-out rights." *See Wal-Mart Stores, Inc. v. Dukes*, __U.S.__, 131 S. Ct. 2541, 2559 (2011). On April 6, 2011, the *Gilman* district court held an evidentiary hearing on the plaintiffs' motions for a preliminary injunction and to amend the class definition. On April 25, 2011, the district court in *Gilman* amended the definition of the certified class to provide, as to the *ex post facto* challenge to the deferral periods, that the class consists of "all California state prisoners who have been sentenced to a life term with possibility of parole for an offense that occurred before November 4, 2008." California federal district courts have interpreted the class to include prisoners with sentences such as Smith. *See Stafford*, 2013 WL 5491858, at *8 (petitioner was a member of the *Gilman* class where he received a sentence in 1991 for thirty-three years to life).

The *Gilman* case is still pending in federal district court. A four-day bench trial concluded on July 2, 2013, and it appears that briefing was completed in October of 2013. Because Smith appears to be a member of the *Gilman* class, and his claim that the application of the extended deferral periods of Proposition 9 violates the *Ex Post Facto* Clause involves the

same challenge as the *Gillman* plaintiffs' pending challenge, we dismiss this claim without prejudice.  *See Tiffin*, 2013 WL 6442689 at *2-3, *Stafford*, 2013 WL 5491858, at *7-8.

V. CONCLUSION

**IT IS THEREFORE ORDERED THAT** Claims One and Two of Smith's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (regarding the sufficiency of the evidence to substantiate the Board's denial of parole and whether the prosecution violated the plea agreement) are **DENIED.**  Claim Three (regarding whether the application of Proposition 9 violated the *Ex Post Facto* Clause) is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: January 31, 2014.

/s/James K. Singleton
JAMES K. SINGLETON
Senior United States District Judge